IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KRISTEN VILLARREAL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:23-cv-139 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1.      Plaintiff KRISTEN VILLARREAL, hereinafter referred to as "Plaintiff," brings this ERISA action against The Guardian Life Insurance Company of America Group Welfare Benefits Plan, in its capacity as Administrator of the Parent Child Inc. Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of her employment with Parent Child Inc.

## PARTIES

2.      Plaintiff is a citizen and resident of San Antonio, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

4.      The disability plan at issue in the case at bar was funded and administered

2

by Defendant.

5. Defendant is a business entity doing business in the Western District of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Western District of Texas is proper by virtue of Defendant doing business in the Western District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979). See *Sanders v.*

3

*State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the Western District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## **CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. G-00491050.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Parent Child Inc., with coverage beginning on October 1, 2013.

10. Said policy became effective October 1, 2013.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

4

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. G-00491050 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review.

5

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

   i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
   ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
   iii. Failure to follow Defendant's own claims procedures 29 C.F.R. §

6

      2560.503-1(b);

iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

29. In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

30. Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1,

2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

31. Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32. Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a de novo standard. Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33. ERISA does not preempt state bans on discretionary clauses because of the "savings clause." ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan." The "savings clause," however, preserves "any law … which regulates insurance…". To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34. Defendant's discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## ADMINISTRATIVE APPEAL

35. Plaintiff is a 32-year-old woman previously employed by Parent Child Inc. as a "Pre-K Teacher."

8

36. Pre-K Teacher is classified under the Dictionary of Occupational Titles as having a Light exertional level. This occupation also has an SVP of 7 and is skilled work.

37. This occupation was very demanding in that it required Plaintiff to take care of and educate students around three to four years old. Teach children about basis fundamentals like numbers, color and shapes, helping children build their social skills and keeping classroom clean and safe for all of the students and teachers..

38. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on August 30, 2018.

39. Plaintiff alleges that she became disabled on August 30, 2018.

40. Plaintiff filed for short term disability benefits with Defendant.

41. Short term disability benefits were approved and paid from August 30, 2018 to November 29, 2018.

42. Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

43. The Plan defines "Disability" or "Disabled" as follows:

*"Disability" or "Disabled" means that a current sickness or injury causes physical or mental impairment to such a degree that the covered person is: (a) not able to perform, on a full-time basis, the major duties of his or her own job and (b) not able to earn more than this plan's maximum allowed disability earnings.*

*The covered person may be required, on average, to work more than 40 hours per week. In this case, he or she is not disabled if he or she is able to work for 40 hours per week.*

*Neither: (a) loss of a professional or occupational license; or (b) receipt of or entitlement to Social Security disability benefits; in and of themselves constitute disability under this plan.*

44. The Plan defines "Own Occupation" as follows:

9

*"Own Occupation" means the occupation: (a) the covered person is routinely performing immediately prior to the disability; (b) which is the covered person's primary source of income prior to disability; and (c) for which he or she is insured under this plan. Occupation includes any employment, trade or profession that are related in terms of similar: (i) tasks; (ii) functions; (ii) skills; (iv) abilities; (v) knowledge; (vi) training; and (vii) experience; required by employers from those engaged in a particular occupation in the general labor market in the national economy. Occupation is not specific to a certain employer or a certain location.*

45. The Plan defines "Gainful Occupation" or "Gainful Work" as follows:

*"Gainful Occupation" or "Gainful Work" means work for which a covered person is, or may become, qualified by: (a) training; (b) education; or (c) experience. When a covered person is able to perform such work on a full-time basis, he or she can be expected to earn at least 80% of his or her insured earnings within 12 months of returning to work.*

46. Long Term Disability benefits were approved from November 30, 2018 to June 1, 2021.

47. The Plan provides for monthly benefits of $1,690.00.

48. On October 1, 2021, Defendant terminated Plaintiff's long term disability benefits.

49. Defendant's termination letter said, "you are capable of performing a sedentary occupation on a full-time basis" under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

50. Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

51. Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal.

52. On October 12, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

53. Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

54. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

55. On or about July 13, 2022, Defendant's internal consultant, John Runzo, CDMS, CCN, CEAS, CEAS II, ADAA, vocational rehabilitation specialist II, performed a paper review of Plaintiff's claim file.

56. There is an indication that Defendant's internal consultant, "C. Hartmann, RN CCM, performed a paper review of Plaintiff's claim file.

57. There is an indication that Defendant's internal consultant, T. Kearney, RN, CCM, performed multiple paper reviews of Plaintiff's claim file.

58. There is an indication that Defendant's internal consultant, A. McMahon, RN, performed a paper review of Plaintiff's claim file.

59. There is an indication that Defendant's internal consultant, Melissa Rentzheimer, RN, BSN, appeals nurse case manager II, performed numerous paper reviews of Plaintiff's claim file.

60. There is an indication that Defendant's internal consultant, A. Sritz, RN, CCM, performed a paper review of Plaintiff's claim file.

61. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable

11

as a basis for denial because:

    a. The reviewers' opinions were infected by conflict and bias;

    b. The reviewers' conclusions lack foundation and are conclusory;

    c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

    d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

    e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

    g. The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

    h. The reviewers based their opinions on summary reports of other underqualified opinions; and

    i. The reviewers' conclusions were inconsistent with the weight of the evidence.

62. Defendant's consultants completed their reports without examining Plaintiff.

63. On June 29, 2022, Defendant paid its expert, William P. Jennings, M.D., FACP, FACOEM (Dr. Jennings), internal medicine and occupational medicine, to conduct a defense medical examination "DME" on Plaintiff.

64. This examination was unreliable and not "independent" as evidenced by:

12

a. Dr. Jennings' opinion was infected by conflict and bias;

b. Dr. Jennings' conclusions lack foundation and are conclusory;

c. Dr. Jennings failed to consider the degenerative nature of Plaintiff's conditions and the lack of significant improvement;

d. Dr. Jennings lacked appropriate qualifications to comment on Plaintiff's conditions;

e. Dr. Jennings failed to spend an adequate amount of time examining Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f. Dr. Jennings failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. Dr. Jennings failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. Dr. Jennings based his opinion on summary reports of other underqualified opinions; and

i. Dr. Jennings' conclusions were inconsistent with the weight of the evidence.

65. Defendant notified Plaintiff that Defendant upheld its original decision to terminate Plaintiff's claim for long term disability benefits.

66. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

67. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers

including the effects of Plaintiff's impairments on her ability to engage in work activities.

68. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

69. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

70. More information promotes accurate claims assessment.

71. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

72. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

73. Plaintiff suffers from rheumatoid arthritis; fibromyalgia; Hashimoto's thyroiditis; GERD; lupus erythematosus (SLE); elevated C-reactive protein; thoracogenic scoliosis; mitral valve prolapse; paresthesia of the hands and feet; irritable bowel syndrome (IBS); psoriasiform dermatitis; and neuropathy.

74. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

75. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

76. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

77. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to

14

engage in any form of exertional activity.

78. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

79. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

80. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

81. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

82. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

83. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

84. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

85. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

86. Defendant's determination was influenced by its conflict of interest.

87. Defendant's reviewing experts are not impartial.

88. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

89. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

90. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

91. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

92. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:

## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

93. Plaintiff incorporates those allegations contained in paragraphs 1 through 92 as though set forth at length herein.

94. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

 a. Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

16

b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

95. Plaintiff repeats and realleges the allegations of paragraphs 1 through 94 above.

96. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long term disability benefits yet unpaid;

B. Order Defendant to pay past due long term disability benefits retroactive to June 2, 2021 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and

17

continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

      D.    Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

      E.    For such other relief as may be deemed just and proper by the Court.

Dated:  Houston, Texas
         February 3, 2023

                              Respectfully submitted,

                              MARC WHITEHEAD & ASSOCIATES,
                              ATTORNEYS AT LAW L.L.P.

                              By:    __/s/ Marc Whitehead_____
                                      Marc S. Whitehead
                                        Tex. Bar No. 00785238
                                        Fed. I.D. No. 15465
                                        marc@marcwhitehead.com
                                    J. Anthony Vessel
                                        Tex. Bar. No. 24084019
                                        Fed. I.D. No. 1692384
                                        anthony@marcwhitehead.com
                                    Britney Anne Heath McDonald
                                        Tex. Bar. No. 24083158
                                        Fed. I.D. No. 2621983
                                        britney@marcwhitehead.com
                                    Selina Valdez
                                        Tex. Bar No. 24121872
                                        Fed. I.D. No. 3633062
                                        selina@marcwhitehead.com

18

    Madison Tate Donaldson
        Tex. Bar No. 24105812
        Fed. I.D. No. 3151467
        madison@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
KRISTEN VILLARREAL